NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEALER COMPUTER SERVICES, INC., | Hon. Dennis M. Cavanaugh |
| Plaintiff, | OPINION |
| v. | No. 2:12-cv-5161 (DMC) (JBC) |
| JOHN C. TREBOUR, et al., | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion for Partial Summary Judgment by Plaintiff Dealer Computer Services, Inc. ("Plaintiff" or "DCS"). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Plaintiff's Motion for Partial Summary Judgment is **granted**.

I. **BACKGROUND**[1]

DCS is a company engaged in the business of providing customized computer hardware, proprietary software, and related support services to automobile dealerships throughout the country. Prior to March 2010, Ward Motors, Inc. ("Ward Motors") was an automobile dealership located in Randolph, New Jersey. At all relevant times, Defendant John Trebour was the President and a director of Ward Motors. On September 6, 2002, DCS and Ward Motors entered into a written contract (the "DCS Contract"), pursuant to which DCS provided a computer system to Ward Motors and Ward Motors agreed to make monthly payments to DCS for 120 months. The

---

[1] The facts set-forth in this Opinion are taken from the parties' statements in their respective briefs.

1

payments were to begin when Ward Motors' computer system became operational, which occurred on January 6, 2003.

Beginning in November 2008, Ward Motors failed to pay DCS's invoices in full. This resulted in DCS declaring Ward Motors in default and sending Ward Motors an accelerated invoice for the balance of payments due under the DCS Contract. DCS initiated arbitration on July 27, 2009, resulting in an arbitration award in DCS's favor in the amount of $829,095.51.

From November 2009 to January 2010, John Trebour and his then wife Jacquelyn Trebour[2] (collectively "the Trebours") agreed to loan a total amount of $1,750,000 to Ward Motors. The Trebours borrowed the funds to make this loan from David Trebour, the brother of John Trebour. The terms of the loan from the Trebours to Ward Motors were set forth in a promissory note dated January 13, 2010.[3] The promissory note stated that the principal and interest would be repaid "upon either the sale of the assets of [Ward Motors] or February 28, 2010, whichever occurs first." That same day, Ward Motors executed a security agreement, collateralizing the loan with various property.

In March 2010, Ward Motors sold its assets and received a promissory note in the amount of $304,729.04, payable in 60 equal monthly installments as part of the purchase price. This sale did not require the new owner to assume responsibility for the remaining term of the DCS Contract. John Trebour, as President of Ward Motors, then assigned the $304,279.04 promissory note to himself and his wife. In consideration of this transfer, the Trebours released their security interest in the assets of Ward Motors. Further, on or about July 15, 2010, John Trebour caused

---

[2] Jacquelyn Trebour died on February 6, 2013. On March 28, 2013, the Estate of Jacquelyn W. Trebour was substituted as a Defendant in place of Jacquelyn Trebour (ECF No. 17).
[3] Defendants assert that the promissory note was not executed until January 2010 even though the loans began in November 2009 because "[t]he Trebours were . . . overwhelmed with the onslaught of events and decision-making in that two-month period."

Ward Motors to pay $21,666.65 to David Trebour for interest due on the loan he made to the Trebours.

On January 25, 2012, DCS's arbitration award was confirmed in the United States District Court for the Southern District of Texas. On March 5, 2012, the judgment was registered in this district. On August 16, 2012, Plaintiff filed its initial Complaint against Defendants, alleging that Defendants engaged in various fraudulent transfers (ECF No. 1). Plaintiff filed an Amended Complaint on August 25, 2012 (ECF No. 4). Plaintiff filed the instant Partial Motion for Summary Judgment on April 1, 2013 (ECF No. 18), arguing that summary judgment should be granted with respect to the promissory note assigned to the Trebours and the transfer of $21,666.65 to David Trebour. Defendants filed an Opposition on May 10, 2013 (ECF No. 21). Plaintiff filed a Reply on May 20, 2013 (ECF No. 22).

## II. **STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." Red Roof Franchising, LLC v. AA Hospitality

Northshore, LLC, 877 F. Supp. 2d 140, 147 (D.N.J. 2012) (citing Anderson, 477 U.S. at 256-57). To do so, "[a] party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements." Id. (citing Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Under the Uniform Fraudulent Transfer Act ("UFTA"), N.J.S.A. § 25:2-20 *et seq.*, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." N.J.S.A. § 25:2-25. The UFTA sets forth a number of factors that courts may consider when determining the intent behind a transfer:

> [W]hether: [1] The transfer or obligation was to an insider; [2] The debtor retained possession or control of the property transferred after the transfer; [3] The transfer or obligation was disclosed or concealed; [4] Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; [5]The transfer was of substantially all the debtor's assets; [6] The debtor absconded; [7] The debtor removed or concealed assets; [8] The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; [9] The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [10] The transfer occurred shortly before or shortly after a substantial debt was incurred; and [11] The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. § 25:2-26. These factors are known as "badges of fraud." In re Norvergence, Inc., 405 B.R. 709, 732 (Bankr. D.N.J. 2009). The existence of one badge can "cast suspicion on the transferor's intent." Truong v. Kartzman, No. 06-5511, 2007 U.S. Dist. LEXIS 48614, at *11 (D.N.J. July 5, 2007) (citing Gilchinsky v. Nat'l Westminster Bank, 732 A.2d 482, 490 (N.J.

1999)). "Where several badges are established, summary judgment may be entered for a plaintiff." Merrill Lynch Bus. Fin. Servs., Inc. v. Kupperman, No. 06-480, 2010 WL 2179181, at *25 (D.N.J. May 28, 2010) aff'd, 441 F. App'x 938 (3d Cir. 2011); see also Truong, 2007 U.S. Dist. LEXIS 48614 at *11-12 (stating that the finding of several badges in one transaction "generally provides conclusive evidence of an actual intent to defraud").

### A. The Transfer from Ward Motors to the Trebours

Plaintiff asserts that numerous badges of fraud are present with respect to the promissory note assigned from Ward Motors to the Trebours. First, the transfer was clearly made to an insider, as John Trebour assigned the note to himself (badge one). Second, because John Trebour was President of Ward Motors, the debtor retained control of the property after the transfer (badge two). Third, the transfer was not disclosed to DCS (badge three). Fourth, before the transfer was made, Ward Motors was threatened with suit, as DCS had accelerated Ward Motors' obligations due and initiated arbitration (badge four). Fifth, the transfer of the net sale of Ward Motors' assets was a transfer of substantially all of its assets (badge five). Sixth, Ward Motors was insolvent at the time of the transfer (badge nine). Seventh, the transfer occurred shortly after a substantial debt was incurred because Ward Motors defaulted in November 2008 and the negotiations that led to the sale of Ward Motors' assets began in the summer of 2009 (badge ten).

The only badge set forth by Plaintiff that is disputed by Defendants is badge ten. Defendants argue that it is insignificant that the note was transferred to the Trebours in March 2010 because this transfer occurred after the Trebours had loaned a significant amount of money to Ward Motors and was therefore valid. This Court finds that the timeline of the Trebours' loan is irrelevant in establishing factor ten. However, this Court also notes that it is questionable whether factor ten is present because Ward Motors defaulted in 2008 and the transfer did not

take place until 2010. Defendants also argue that factor eight is missing because the consideration Ward Motors received for the transaction was five times greater than the value of the assignment to the Trebours, as the Trebours released their security interest in the assets of Ward Motors. This Court agrees that factor eight is not present in the transfer from Ward Motors to the Trebours. However, even if factors eight and ten are missing, Plaintiff has undisputedly established the presence of six other factors. In Merrill Lynch, the plaintiff asserted that seven badges of fraud were present in the alleged fraudulent transfer. 2010 WL 2179181 at *25. Although this Court agreed that three of the badges were questionable, it stated that "the fact that [the plaintiff] can only unambiguously demonstrate the presence of four (4) badges of fraud does not justify denial of summary judgment." Id. See also Gilchinsky, 732 A.2d at 489-90 ("The proper inquiry is whether the badges of fraud are present, not whether some factors are absent."); AYR Composition, Inc. v. Rosenberg, 619 A.2d 592, 596 (N.J. Super. Ct. App. Div. 1993) (rejecting the appellant's argument that "because the trial judge only found six of eleven suggested [badges of fraud], there remain[ed] several issues of fact concerning [the transfer]").

Although Plaintiff has shown that six badges of fraud are present, Defendants make several additional arguments as to why the transfer was not fraudulent that this Court will address. First, Defendants argue that "had the Trebours not made the [loans] . . . Ward Motors would have been forced to close its doors, the March 2010 asset sale would never have taken place, and Ward Motors would have defaulted in [payments due to its creditors]" (Def.'s Opp'n at 9). Therefore, as explained by Defendants, "[t]he Trebours required a secured transaction as a condition for lending money to the company to pay general creditors, knowing full well at the time that they would only be repaid a small portion of the loan when the assets sale took place" (Id. at 14). While these facts may be true, they are not relevant to whether Defendants violated

6

N.J.S.A. § 25:2-25 by making a transfer to themselves before paying Plaintiff. Second, Defendants argue that although the Trebours were insiders, they were also creditors who had the right to obtain an assignment of the promissory note in exchange for discharging their secured lien against the assets of Ward Motors. Further, Defendants state that "[i]t is well settled that a debtor may prefer one creditor over another" (Id. at 13). However, this district has stated the following:

> Under New Jersey law, when a corporation becomes insolvent, a quasi-trust relationship arises between the officers and directors on the one hand and the corporation's creditors on the other. As a result, a duty arises whereby officers and directors cannot prefer one creditor over another, and they have a special duty not to prefer themselves.

Matter of Stevens, 476 F. Supp. 147, 153 (D.N.J. 1979) (internal citation and quotations omitted). Thus, the Trebuors were not entitled to favor themselves in this scenario. Accordingly, summary judgment is granted with respect to the transfer from Ward Motors to the Trebours.

### B. The Transfer from Ward Motors to David Trebour

Defendants assert that the transfer from Ward Motors to David Trebour was a "bookkeeping shortcut" used to partially pay back David Trebour for the loans he made to the Trebours (Def.'s Opp'n at 14). Defendants explain that "[i]nstead of writing a check to himself, which would not be a fraudulent transfer under these circumstances, John C. Trebour caused Ward Motors to write a check to . . . David Trebour" (Id.) Defendants also state that "[i]n retrospect, John C. Trebour recognizes that he should have written the check to himself and then remitted payment to his brother, rather than take this bookkeeping shortcut" (Id. at 3).

As discussed above, the transfer that John Trebour made to himself and his wife was a fraudulent transfer. Therefore, Defendants' argument that the transfer to David Trebour was valid because it was a mere "bookkeeping shortcut" that John Trebour took instead of first

7

transferring the funds to himself must fail. Accordingly, summary judgment is granted with respect to the transfer from Ward Motors to David Trebour.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is **granted**. An appropriate order follows this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date: November 8, 2013
Original: Clerk's Office
cc: Hon. James B. Clark U.S.M.J.
All Counsel of Record
File